## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LAURETTE SANTOS,

    Plaintiff,

    v.

DOUGLAS A. COLLINS, Secretary,
Department of Veterans Affairs,

    Defendant.

Civil Action No.  24-1759

## MEMORANDUM OPINION

For years, Laurette Santos, a blind Department of Veterans Affairs ("VA") employee, relied on a screen-reader software called Job Access With Speech ("JAWS") to operate VA's electronic health record system ("EHR").  But in June 2022, Santos's VA facility switched to a new EHR—one incompatible with JAWS.  After raising the inaccessibility issues to VA to no avail, Santos brought this lawsuit, alleging that VA's deployment of the new EHR and failure to provide her with a reasonable accommodation violate Sections 508 and 501 of the Rehabilitation Act of 1973.  See 29 U.S.C. §§ 794, 794d(a)(1)(A).  Now VA moves to dismiss Santos's complaint for lack of subject matter jurisdiction and failure to state a claim.

## BACKGROUND[1]

Santos is a licensed social worker who has worked at VA's White City, Oregon, location for over a decade.  Am. Compl. [ECF No. 23] ¶¶ 13–14.  Since 2019, she has served as the

---

[1] The following facts are from Santos's amended complaint because, on a motion to dismiss, a court generally accepts a plaintiff's well-pleaded allegations as true.  See Cunningham v. Cornell Univ., 145 S. Ct. 1020, 1025 n.2 (2025).  Throughout this Opinion, the Court also cites to the Equal Employment Opportunity Commission ("EEOC") record where relevant.  See Ndondji v. InterPark Inc., 768 F. Supp. 2d 263, 272 (D.D.C. 2011) (courts can consider public records, such as administrative records, when ruling on a motion to dismiss for failure to state a claim).

location's Visual Impairment Services Team ("VIST") coordinator, meaning she "is responsible for coordinating all services for visually impaired veterans and service members and their families." Id. ¶ 15. That breaks down into an array of duties, including "referring visually impaired veterans to the appropriate service component in the continuum of care; developing focused treatment plans containing goals to meet the veterans' needs; . . . providing follow-up for rehabilitation services;" and "assisting veterans and their family members with issues surrounding the emotional adjustment to blindness." Id.

Those duties require the use of an EHR.[2] When Santos became VIST coordinator in 2019, VA's White City location used an EHR called the Computerized Patient Record System ("CPRS"). Id. ¶ 17. Critically for Santos, CPRS was and is compatible with JAWS, a screen-reader software. Id. ¶ 18. Screen-reader software "monitor[s] computer screen[s] and convert[s] . . . textual information displayed into synthesized speech or into Braille on a device known as a 'refreshable Braille display.'" Id. ¶ 11. Put simply, the software allows blind people like Santos to review printed materials on computers and other technological devices. See id. ¶ 12.

With JAWS's help, Santos was able to use CPRS to "perform the essential functions of her job" like making referrals, placing and approving orders for assistance devices, and updating veterans' health records and other information. Id. ¶ 18. She could perform all these tasks "independently . . . with only limited assistance of [her] sighted assistant." Id.

However, the whole time Santos was successfully using CPRS, VA was working to replace it. In 2008, Congress required by statute that VA and the Department of Defense ("DoD") make

---

[2] "An EHR is software that's used to securely document, store, retrieve, share, and analyze information about patient care" and "enables a digital version of a patient record." What Is the FEHRM?, Fed. Elec. Health Rec. Modernization, https://www.fehrm.gov/about-fehrm/ (last visited Apr. 29, 2025). Throughout this Opinion, the Court takes judicial notice of government websites. See, e.g., Dastagir v. Blinken, 557 F. Supp. 3d 160, 163 n.3 (D.D.C. 2021).

their EHRs interoperable—a directive Congress reaffirmed and clarified in 2014 and 2020 (together, "the NDAA").[3]  See National Defense Authorization Act ("NDAA") for FY 2008, Pub. L. No. 110-181, § 1635, amended by Duncan Hunter NDAA for FY 2009, Pub. L. No. 110-417, § 252; NDAA for FY 2014 ("2014 NDAA"), Pub. L. No. 113-66, §§ 713(a)–(b), 127 Stat. 672, 794–95; NDAA for FY 2020, Pub. L. No. 116-92, § 715(c), 133 Stat. 1198, 1447–48.  To fulfill this mandate, VA decided to acquire the EHR DoD uses: Oracle Cerner EHR ("the Cerner System").  See Joint Audit; Am. Compl. ¶¶ 20–21.

Throughout the acquisition process, the blind community expressed concerns about the risk of VA adopting an EHR system that was incompatible with screen-reader software.  Before VA had chosen the Cerner System, the National Federation of the Blind ("NFB") wrote a letter to VA urging it "and the DOD to select a vendor that would design an accessible system 'for compatibility with screen-access software.'"  Am. Compl. ¶ 19.  And when Cerner won the design contract in 2015, NFB urged the corporation to "ensure that its technology be fully accessible" to blind individuals, and to "shar[e] complaints that the NFB had received from blind employees in other workplaces who reported problems accessing Cerner's EHR system."  Id. ¶ 20.

So, "[w]hen the VA" contracted with Cerner to implement its newly designed Cerner System in 2018, VA "was well aware of the need to meet accessibility requirements."  Id. ¶¶ 19, 21.  Yet it did not ensure the Cerner System was compatible with screen-reader software before it entered that contract.  See id. ¶ 23.  Instead, it included in the contract an ex post requirement that the Cerner System be compatible in the future.  See id. ¶ 22.

---

[3] See Inspector Gen. U.S. Dep't of Def. & Inspector Gen. U.S. Dep't of Veterans Affs., Joint Audit of the Department of Defense and the Department of Veterans Affairs Efforts to Achieve Electronic Health Record System Interoperability (May 3, 2022), https://media.defense.gov/2022/May/17/2002999634/-1/-1/1/DODIG-2022-089_508.PDF ("Joint Audit").

But VA did not require Cerner—or its corporate successor Oracle—to immediately comply with that part of the contract.  See id. ¶¶ 24–28.  VA knew the Cerner System was not compatible with screen-reader software "[b]y, at latest, October 21, 2019."  Id. ¶ 24.  In fact, because VA was aware of the system's deficiencies, VA asked Santos to work with it and Cerner "to prepare for the rollout of" the Cerner System at the White City facility.  See id. ¶ 25.  While so involved, Santos began in early 2020 to raise concerns about the Cerner System's screen-reader compatibility.  Id. ¶ 26.  Throughout that year and the next, VA conducted numerous audits of the Cerner System—audits that confirmed the system's incompatibility with screen-reader software. Id. ¶ 27.  Despite these audits, the concerns Santos voiced, and VA's ability to postpone the rollout, VA deployed the Cerner System at the White City facility and one other VA location in June 2022. Id. ¶ 29; EHR Deployment Schedule, U.S. Dep't of Veterans Affs., https://digital.va.gov/ehr-modernization/ehr-deployment-schedule/ (last visited Apr. 29, 2025).  Those two locations joined three others at which VA had already rolled out the Cerner System.  See EHR Deployment Schedule.

The deployment of the Cerner System confirmed Santos's fears.  It "has had disastrous consequences for [her] ability to work independently."  Am. Compl. ¶ 31.  No longer can she independently fulfill the duties she could with CPRS—e.g., "receiving and making referrals; placing and approving orders for devices, software, and other items for veterans; . . . reading, reviewing, and updating veterans' records" and "schedul[ing] appointments for veterans or access[ing] Cerner to track upcoming appointments."  Id. ¶¶ 31, 62.  She must instead "delegate these tasks to sighted employees" like her sighted assistant and her supervisor.  Id. ¶ 32.  These difficulties have caused Santos to "suffer discrimination" and "emotional distress."  Id. ¶¶ 63–64.

In light of these hardships, Santos sought relief from VA. She started by requesting an accommodation in the form of "full access to an EHR system that is accessible and compatible with JAWS." Id. ¶ 35. VA did not fulfill that request, but instead allowed Santos to continue to use CPRS in a read-write-only format, "with assistance from sighted individuals to do orders, process communication (referrals and comments), and view other patient information." Id. ¶ 36. This response still left Santos unable "to independently perform the essential functions of her job" and further prohibited her from "handl[ing] anything close to the workload she previously completed." Id.

So Santos proceeded to file two formal administrative complaints. First, she filed a complaint with VA's Section 508 Office. Id. ¶ 41. The Section 508 Office is charged primarily with ensuring VA compliance with Section 508 of the Rehabilitation Act of 1973,[4] which—as the Court will detail later—requires federal departments and agencies to ensure that individuals with disabilities have access to electronic and information technology comparable to the access of individuals without disabilities. See 29 U.S.C. § 794d(a)(1)(A). Second, she filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging VA violated Section 501, which—as the Court will also detail later—requires federal employers to make reasonable accommodations to employees with disabilities. See 42 U.S.C. § 12112(b)(5)(A); 29 U.S.C. § 791(f) (incorporating this standard into the Rehabilitation Act); EEOC Compl. [ECF No. 37-5]. While the Section 508 Office was still investigating Santos's complaint, an EEOC administrative law judge granted VA's motion for summary judgment in April 2024, determining there was

---

[4] See Accessibility and Section 508, U.S. Dep't of Veterans Affs., https://digital.va.gov/section-508/ (last visited Feb. 29, 2025) (The Section 508 Office "[a]udits [information and communication technology] for compliance with Section 508 standards and policies," "[p]rovides support to project managers by offering tools, training, and support," and "[s]erves as a liaison for VA's Chief Information Officer (CIO) and makes department-wide policy recommendations regarding Section 508 issues."

insufficient evidence to show VA discriminated against Santos because of her disability. Am. Compl. ¶ 53.

Undeterred, Santos brought this lawsuit in June 2024. See Compl. & Demand for Jury Trial [ECF No. 1] at 14; 29 U.S.C. §§ 794a(a)(2), 794d(f)(3). As she did in front of the agency, Santos brings two claims: first, that VA's procurement and use of the Cerner System violate Section 508 because the Cerner System is incompatible with JAWS (Count I); and second, that VA is discriminating against her in violation of Section 501 by failing to provide her a reasonable accommodation (Count II). Am. Compl. ¶¶ 55–71. For relief, Santos seeks an injunction, a declaratory judgment, compensatory damages, and punitive damages. Id. at 13–14. She also demands a jury trial. Id. at 15.

Months after filing her complaint, Santos moved for a preliminary injunction, which the Court denied. Santos had standing to seek the injunction, but she did not clearly show she was suffering or would suffer irreparable harm before the Court could rule on the merits of her claims. See Mem. Op. & Order [ECF No. 38] ("PI Op."). That leaves VA's motion to dismiss. See Def.'s Mot. to Dismiss & Mem. in Supp. [ECF No. 37] ("Mot."); Pl.'s Opp'n to Def.'s Mot. to Dismiss [ECF No. 39] ("Opp'n"); Def.'s Reply in Further Supp. of Mot. to Dismiss [ECF No. 42] ("Reply").

## ANALYSIS

VA asks the Court to dismiss Santos's complaint both for lack of subject matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), and failure to state a claim, see id. 12(b)(6).

### I.        Rule 12(b)(1)

VA makes one overarching and two claim-specific arguments regarding this Court's subject matter jurisdiction. To start, VA argues that the Court doesn't have subject matter

jurisdiction to adjudicate any of Santos's claims because she fails to establish Article III standing. See Mot. at 33–40.  Then, VA argues that the Court lacks subject matter jurisdiction over Santos's claim for compensatory damages under Section 508 and for punitive damages under Section 501 because the United States has not waived sovereign immunity for either.[5]  Id. at 51–52, 62.[6]

### a.  Standing

VA launches a factual challenge to Santos's standing: rather than argue the complaint fails to adequately allege standing, VA relies on materials outside of the pleadings to contend Santos does not in fact have standing to bring her claims.  See Phoenix Consulting Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000) (explaining the difference between factual and facial challenges to standing).  The Court therefore "must [also] go beyond the pleadings" to determine whether the record shows this Court has the power to resolve this dispute.  Id.  That said, the Court's analysis must assume that Santos "will prevail on the merits" of her legal claims.  See Comm. on Judiciary of U.S. House of Representatives v. McGahn, 968 F.3d 755, 762 (D.C. Cir. 2020).

Article III requires that a plaintiff have an injury in fact, caused by the challenged conduct, and redressable by the relief requested.  TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). Satisfying this tripartite requirement as to one claim or one form of relief is not enough; the

---

[5] In addition to challenging Santos's claim for punitive damages under Section 501, VA's motion challenges her claim for such damages under Section 508.  Mot. at 62.  But Santos voluntarily dismissed that claim in her opposition, see Opp'n at 31 n.5, so the challenge is moot.

[6] VA also argues that Santos has no right to have a jury decide her Section 508 claim, an argument that VA frames as a matter of sovereign immunity.  Mot. at 51–52.  The question whether the United States has granted a right to a jury trial is undoubtably related to the question whether the United States has waived its sovereign immunity. See, e.g., Lehman v. Nakshian, 453 U.S. 156, 160–62 & n.9 (1981).  But a demand for a jury trial is not a claim for relief subject to a motion to dismiss; it is a request properly challenged via a motion to strike.  See, e.g., Thomas v. Home Depot USA, Inc., 661 Fed. App'x 575, 577–78 (11th Cir. 2016) ("A jury demand . . . is no element of a complaint itself."); Lehman, 453 U.S. at 158; Lorillard v. Pons, 434 U.S. 575, 576 (1978); Wise v. Glickman, 257 F. Supp. 2d 123, 132 (D.D.C. 2003).  So the Court construes this portion of VA's motion as a motion to strike and addresses the issue later in this Opinion.  See Fed. R. Civ. P. 12(f); id. at 38(b).

plaintiff "must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." Davis v. Federal Election Comm'n, 554 U.S. 724, 734 (2008) (internal quotation marks omitted).

VA argues that Santos establishes none of these three requirements for either claim. Not so. Begin with Santos's view of what gives her standing. For both her Section 508 and 501 claims, she asserts that she suffers the same harm: her sighted colleagues can do their jobs independently while she—because she is blind—cannot, and this unequal treatment in turn causes her stigmatic and emotional harm. See Am. Compl. ¶¶ 64, 71; Opp'n at 10; see also PI Op. at 8–9. She "regularly feel[s] humiliated, anxious, and depressed by [her] inability to do [her] job," and has "taken hundreds of hours of . . . leave" and "sought mental health counseling" "because of the emotional distress [she] ha[s] experienced." Decl. of Laurette Santos [ECF No. 30-1] ("Second Santos Decl.") ¶ 29. This harm, Santos argues, is caused by VA's rollout of the JAWS-incompatible Cerner System (the alleged Section 508 violation) and VA's failure to provide her with a reasonable accommodation (the alleged Section 501 violation), and it would be redressed by an injunction, a declaration, and damages.

In its preliminary-injunction opinion, the Court concluded that Santos had adequately established the harm she suffers is an injury in fact caused by VA's alleged Section 508 violation and redressable by an injunction. See PI Op. at 6–10. No change in law or fact warrants revisiting this conclusion. See Parker v. John Moriarty & Assocs., 221 F. Supp. 3d 1, 2 (D.D.C. 2016) (explaining what justifies a district court's reconsideration of a prior order). And the Court remains confident that its conclusion is right, rather than a clear error, see id.—and that its reasoning establishes that Santos also has standing to pursue her other claims.

*Injury in fact.* To be an injury in fact, a harm must be "particularized," "actual or imminent," and "concrete." TransUnion, 594 U.S. at 423. Santos's asserted harm is undoubtedly particular to her and her job, and—because the Cerner System remains not fully compatible with JAWS and VA has allegedly still failed to provide a reasonable accommodation[7]—the harm is not only actual but ongoing. So if her harm is concrete, Santos has an injury in fact to support her claims for declaratory, injunctive, and monetary relief. See Animal Legal Def. Fund, Inc. v. Vilsack, 111 F.4th 1219, 1227 (D.C. Cir. 2024); TransUnion, 594 U.S. at 436.

To be concrete, a harm must be not only "real, and not abstract," TransUnion, 594 U.S. at 424 (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016)), but also "a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," or at least have a "close relationship" to such a harm, id. (quoting Spokeo, 578 U.S. at 341). So simply asserting that VA is violating Sections 508 and 501 does not give Santos a concrete injury; those violations must

---

[7] In its motion and attendant exhibits, VA averred that in March 2025 a new version of the Cerner System—Cerner Block 12—was being rolled out at the White City facility, and that Block 12 would be fully compatible with JAWS. See Mot. at 26; Second Decl. of Leslie Sofocleous [ECF No. 37-4]. The Court thus directed the parties to file supplemental briefing on whether Santos's claims for injunctive relief are moot. See Min. Order of May 9, 2025. As expected, VA said yes and Santos said no.

VA largely recapped its statements from its motion and concluded that, because Leslie Sofocleous—the Executive Director of Program Management Office within the Electronic Health Record Modernization Integration Office—said Block 12 had fixed the compatibility issues, Santos's injury is no longer ongoing. See generally Def.'s Resp. Court's May 9, 2025 Min. Order [ECF No. 45]. According to Sofocleous, Block 12 has been released to all users, including Santos, and it simply is up to Santos to collaborate with leadership to "complete[] the necessary provisioning steps and coordinate[] the completion of required system training." Third Decl. of Leslie Sofocleous [ECF No. 45-1] ¶¶ 5–9.

Santos, however, explained that many functions of the Cerner System available to her remain incompatible with JAWS, that the Section 508 Office has confirmed as much, that she has not heard of any Block 12 release, that no one has contacted her about Block 12 training, and that, as of May 20, 2025, not even the IT specialist at the VA's Section 508 Office tasked with testing the Cerner System for Section 508 compliance knew about Block 12 fixing all compatibility issues. See generally Decl. of Laurette Santos [ECF No. 44-1] ("Third Santos Decl.").

Considering VA bears the high burden of establishing mootness, the Court determines Santos's claims for injunctive relief remain alive. While the Court has no reason to doubt that Block 12 has been released, Santos gives the only account of the state of the system she has access to, and by that account at least some functions of that system remain incompatible with JAWS and therefore inaccessible to Santos. As a result, Santos continues to suffer harm and the Court could still provide her effectual injunctive relief. See Chafin v. Chafin, 568 U.S. 165, 172 (2013) ("[A] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (internal quotation marks omitted)). Should Santos's system change or should VA collect more evidence that Santos's system is in fact completely compatible with JAWS, VA can reraise its mootness argument.

cause her a traditionally recognized harm or a harm with "a close historical or common-law analogue." See id. at 424–26. They do.

To start, courts have long recognized that discriminatory treatment causes a cognizable stigmatic harm—at least when it comes to constitutional claims. See Allen v. Wright, 468 U.S. 737, 757 n.22 (1984) ("[S]tigmatic injury" is "sufficient for standing" if the plaintiff is "personally subject to discriminatory treatment."); TransUnion, 594 U.S. at 426 (citing Allen for proposition that discriminatory treatment is a traditionally recognized harm); Ohio v. EPA, 98 F.4th 288, 307 (D.C. Cir. 2024).[8]

From there, the Court relies on Congress's perspective, as "Congress may 'elevate to the status of legally cognizable'" a harm analogous to one traditionally recognized. See TransUnion, 594 U.S. at 425 (quoting Spokeo, 578 U.S. at 341). There's no question that Congress enacted Sections 508 and 501 because it determined unequal access and treatment in the workplace causes a similar stigmatic harm to that traditionally recognized in American courts. See 29 U.S.C. § 701(b)(1)(F) (stating as a purpose of Section 508 "empower[ing] individuals with disabilities to maximize employment, economic self-sufficiency, independence, and inclusion and integration into society, through . . . the guarantee of equal opportunity"); Orozco v. Garland, 60 F.4th 684, 692 (D.C. Cir. 2023) ("Congress amended [Section 508] to make sure that agencies would fulfill their responsibility to procure technology that allows employees with disabilities to participate fully in the workplace."); Barth v. Gelb, 2 F.3d 1180, 1183 (D.C. Cir. 1993) (explaining that Section 501 and its enforcement provision are aimed at "spur[ring] governmental efforts to employ

---

[8] As the Court explained in its preliminary-injunction opinion, caselaw is opaque as to whether a plaintiff establishes she is suffering a cognizable harm simply by showing she has been treated differently, or if she must separately show that treatment has led to stigmatic, emotional, or other harm. See PI Op. at 9. The Court need not try to clarify that opacity, since Santos asserts she is suffering stigmatic and emotional harms because of the alleged discriminatory treatment. See Second Santos Decl. ¶ 29.

the handicapped" and protecting federal agency employees "subjected to handicap discrimination"); Consol. Rail Corp. v. Darrone, 465 U.S. 624, 632 n.12 (1984) (Section 501 was "aimed at discrimination in employment"). In other words, by enacting Sections 508 and 501, Congress did not "transform a non-injury into an injury on its say-so"; rather, it "identified a modern relative of a [traditionally-recognized] harm." Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.). And Santos claims she's suffering precisely the harm Sections 508 and 501 were "designed to prevent." See id.

The upshot is that, assuming Santos will prevail on her legal claims, she has established that she is suffering a particularized, actual, and concrete harm—i.e., an injury in fact.

*Causation and Redressability*. "Causation and redressability are often flip sides of the same coin": if a defendant's conduct causes the plaintiff's harm, enjoining that conduct or awarding the plaintiff damages will generally remedy the harm. See FDA v. All. for Hippocratic Med., 602 U.S. 367, 380 (2024) (cleaned up).

This case is no outlier. Santos's stigmatic and emotional harm is a direct result of VA's rollout of the Cerner System at Santos's facility and VA's alleged refusal to provide her with a reasonable accommodation. But for that conduct, Santos would remain able to independently complete the job duties she was able to complete with CPRS—meaning she would not be treated differently than sighted employees or feel "humiliated, anxious, and depressed" as a result. See Second Santos Decl. ¶ 29. An injunction and damages would redress that harm: VA would be required to give Santos access to a JAWS-compatible EHR and/or provide Santos with an accommodation that would permit her independently to perform the relevant job duties; and Santos would be compensated for her suffering.

VA contests this straightforward reasoning. In its view, Santos's injury is caused either by Oracle or Congress. Mot. at 36. The former, VA says, is the cause of Santos's injury because VA obligated Oracle via contract to ensure the Cerner System is Section 508-compliant and Oracle simply has not yet lived up to that obligation. See id. at 36–37. In the alternative, VA argues that Congress caused Santos's injuries by enacting the NDAA: Congress required VA and DoD to make their EHRs interoperable and VA thus procured and began rolling out the Cerner System. See id. at 37. By implication, VA concludes that an injunction against it would not redress Santos's harm.

There are several flaws with these arguments. Most basically, the causation requirement does not mandate that the challenged conduct be the only cause of a plaintiff's harm. See, e.g., All. for Hippocratic Med., 602 U.S. at 384–85. It requires simply that the "links in the chain of causation" from the challenged action to the injury "not be too speculative or too attenuated." Id. at 383. So, it is true that Oracle's delays and Congress's mandate have contributed to VA's slow rollout of the not-fully-JAWS-compatible Cerner System and VA's refusal to provide Santos a reasonable accommodation—and thus the harm Santos is suffering from those actions. But that doesn't mean VA's rollout of the JAWS-incompatible Cerner System and its non-provision of a reasonable accommodation weren't also causes of Santos's harm. Indeed, VA's actions—which form the last "links in the chain of causation"—are the least speculative and attenuated causes. See id. And it would be odd, to say the least, for that causal link to be severed simply because VA contracts out its responsibility to ensure Section 508 compliance or because Congress mandated EHR compatibility.

That brings us to the next issue with VA's arguments: the actions Santos challenges are actions VA took autonomously. True, VA included in its procurement contract a requirement that

the Cerner System be Section 508-compliant.  Am. Compl. ¶ 22.  But procuring a noncompliant EHR and then rolling it out despite the continued noncompliance—which Santos alleges VA did—were VA's own choices.  The flip side of this is that an injunction could remedy Santos's injury despite Oracle being in control of the Cerner System's development: the Court can require VA to put pressure on Oracle to immediately adhere to its contractual obligation to make the Cerner System Section 508-compatible.  See Hecate Energy LLC v. FERC, 126 F.4th 660, 667 (D.C. Cir. 2025) (noting that even if a "court's action would not directly redress the injury," the injury is redressable if the court's action "would very likely spur the next steps necessary to redress" the injury).  And regardless, the Court could require VA to roll back its deployment of the Cerner System at the White City facility.  VA cannot use a contract to hide from its statutory obligations.

Congress also wasn't the sole cause of Santos's injury, nor does Congress's mandate prevent an injunction against VA from redressing that injury.  The NDAA does not require VA to adopt an EHR that is incompatible with JAWS, procure DoD's EHR, or refuse reasonable EHR accommodations.  See infra, Part III.a.ii.2 (discussing the text of the NDAA and Section 508).  To the contrary, VA acknowledges that out of several possible options for compliance with the NDAA, VA decided that it would adopt the Cerner System.  See VA's Determinations & Findings on Auth. to Award Contract for the EHR Sys. Being Deployed by DoD [ECF No. 37-3] ("Cerner D&Fs") (explaining VA's decision to procure DoD's EHR).  Therefore, VA's obligations under the NDAA do not prevent an injunction redressing Santos's injury—e.g., by requiring VA to ensure the Cerner System is JAWS compatible, to reinstate the old EHR, and/or to provide Santos a reasonable accommodation while finding a new way to comply with the NDAA.

Lastly, VA fails to mention that Santos also seeks damages. That's likely because it is clear that having VA pay to make Santos whole would redress the harm she has suffered. See TransUnion, 594 U.S. at 436.[9]

In sum, Santos has an injury in fact, caused by VA's challenged conduct, and redressable by both injunctive relief and damages, and hence standing to pursue all her claims.

### b. Sovereign Immunity

The United States enjoys immunity from suit unless a statute's text "unequivocally" waives it. See Lane v. Pena, 518 U.S. 187, 192 (1996). One statute that does so is § 702 of the Administrative Procedure Act, which waives federal agencies' immunity from suits "seeking relief other than money damages." 5 U.S.C. § 702. So VA is subject to suit for Santos's claims for injunctive relief under both Sections 508 and 501. Dep't of Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999). But Santos needs another statute to allow her to seek compensatory and punitive damages. See Lane, 518 U.S. at 192 ("To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims."). Any such statute must clear a high bar: a suit for damages will not lie "if there is a plausible interpretation of the statute that would not authorize" those damages. FAA v. Cooper, 566 U.S. 284, 290–91 (2012). And a waiver for one type of damages doesn't necessarily

---

[9] VA also argues that Santos lacks standing because the particular injunctive relief she seeks goes beyond redressing solely her injuries. See Mot. at 38–40. But the question whether Santos's injury could be redressed by an injunction is distinct from the question whether she will be entitled to the precise injunction she seeks if she prevails on the merits. While the former question is one of standing, the latter is not. See, e.g., Trump v. Hawaii, 585 U.S. 667, 698–99, 711 (2018) (determining plaintiffs had standing but not reaching the issue whether district court's injunction in their favor was impermissibly broad); Salazar v. Buono, 559 U.S. 700, 713 (2010); Daniels v. Exec. Dir. of Fla. Fish & Wildlife Conservation Comm'n, 127 F.4th 1294, 1304 (11th Cir. 2025) ("[S]tanding requires a remedy limited to the injury in fact which a plaintiff has established[,] . . . [b]ut whether the injunctive relief sought . . . is properly tailored . . . is an issue separate from the determination of standing."). Rather, it is a question of the proper scope of relief—an issue that will arise only if and after the Court concludes that Santos prevails on the merits. See Fed. R. Civ. P. 54(c) (Courts "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.").

waive sovereign immunity for <u>all</u> types of damages; rather, the scope of a waiver of sovereign immunity is "strictly construed . . . in favor of the sovereign."  <u>See</u> <u>Lane</u>, 518 U.S. at 192; <u>Cooper</u>, 566 U.S. at 290, 299.

### i. Section 501

VA rightly recognizes that the United States has waived its immunity for compensatory damages under Section 501.  <u>See</u> <u>Lane</u>, 518 U.S. at 193–94; 42 U.S.C. § 1981a(a)(2); 29 U.S.C. § 794a(a)(1).  But it contends that the scope of that waiver does not extend to punitive damages.  Mot. at 62.

Under 42 U.S.C. § 1981a(a)(2), a complaining party may recover "compensatory and punitive damages" from "a respondent who" failed to provide a reasonable accommodation—but only "as allowed in subsection (b)."  Subsection (b) then states that the complaining party "may recover punitive damages under this section against a respondent []<u>other than a government, government agency or political subdivision</u>[]."  § 1981a(b)(1) (emphasis added).  In VA's view, § 1981a(b)(1) makes clear that Santos can't seek punitive damages on Count II.  Mot. at 62.

Santos, however, contends that § 1981a's text cuts in the other direction.  She points out that § 1981a(b)(1) covers many more claims than just those under Section 501 of the Rehabilitation Act.  Opp'n at 31–32; 42 U.S.C. § 1981a(b)(1).  It also covers certain actions that are not necessarily against federal entities, such as claims under Title VII and the Americans with Disabilities Act.  42 U.S.C. § 1981a(b)(1); <u>id.</u> § 12112(a).  Per Santos, it is for those claims that "Congress <u>generally</u> limited the availability of punitive damages . . . against governmental defendants."  Opp'n at 31–32 (emphasis in original).  But, Santos posits, § 1981a(a)(2)'s mention of punitive damages would be rendered superfluous were § 1981a(b)(1)'s limitation extended to Section 501 claims—claims that are always against federal government entities.  <u>Id.</u>; <u>see</u> <u>TRW</u>

Inc. v. Andrews, 534 U.S. 19, 31 (2001) (explaining that a statute should generally be read to give effect to each of its words).  So, in her view, § 1981a(a)(2) "specifically carved out" claims under Section 501 from the punitive damages limitation in § 1981a(b)(1) for claims under Section 501. Opp'n at 32 (emphasis removed).

Santos's argument might carry some weight were the Court not assessing a waiver of sovereign immunity.  But Santos's reasoning-by-implication all but admits that § 1981a does not "unambiguously" state that the government is subject to punitive damages for Section 501 claims. See Lane, 518 U.S. at 192.

Quite to the contrary, Section 1981a is best read to prohibit Section 501 claimants from recovering punitive damages.  Section 1981a(a)(2) specifically lists the disability-discrimination claims to which it applies, and then states that those bringing said claims "may recover . . . from the respondent" "compensatory and punitive damages as allowed in subsection (b)."  42 U.S.C. § 1981a(a)(2) (emphasis added).  That limitation is part and parcel of the provision of a damages remedy; the subsection does not expressly confine the limitation's reach to only some of the enumerated claims.

Section 1981a(b)(1) proceeds to apply just as broadly.  It simultaneously (1) does not expressly limit its applicability to claimants asserting certain claims and (2) expressly limits the respondents from whom those claimants can recover punitive damages to non-governmental respondents.  See id. § 1981a(a)(2) ("A complaining party" can recover punitive damages "against a respondent (other than a government, government agency or political subdivision).").  The clearest takeaway is that no complaining party—regardless of the violation for which he complains—can recover punitive damages from a government.

Likely because the statute is so clear, no court has adopted Santos's reading of § 1981a.[10] Instead, courts in this district and beyond regularly conclude—without equivocation—that § 1981a(b)(1) prohibits claims for punitive damages against government agencies.  See, e.g., Harley v. Dalton, 896 F. Supp. 29, 32 (D.D.C. 1995) (no punitive damages against government in claim under Section 501); Garity v. Brennan, 845 Fed. App'x 664, 665 (9th Cir. 2021) (mem) (same); see also, e.g., Terry v. Ashcroft, 336 F.3d 128, 153 (2d Cir. 2003); Tyson v. Dejoy, Civ. A. No. 16-1678 (FYP), 2021 WL 5416628, at *1 n.2 (D.D.C. Nov. 19, 2021); McAlister v. Potter, 733 F. Supp. 2d 134, 146 (D.D.C. 2010); Lewis v. District of Columbia, 535 F. Supp. 2d 1, 12 (D.D.C. 2008).  This Court concludes the same: § 1981a does not explicitly waive VA's sovereign immunity from punitive damages in Section 501 claims.  So the Court grants VA's motion to dismiss Santos's request for punitive damages.

### i.    Section 508

As to Count II, VA contends as well that the United States has not waived its sovereign immunity for compensatory damages for violations of Section 508.[11]  Mot. at 51–52.

The remedies for Section 508 (codified at 29 U.S.C. § 794d) are provided through a winding statutory path.  The starting point is 29 U.S.C. § 794d(f), which permits "any individual with a disability [to] file a complaint alleging that a Federal department or agency fails to comply with" Section 508. 29 U.S.C. § 794d(f)(1)(a).  It then gives those individuals civil remedies: namely, "[t]he remedies, procedures, and rights set forth in" 29 U.S.C. § 794a(a)(2).  See § 794d(f)(3).  That statute, in turn, provides for "[t]he remedies, procedures, and rights set forth in

_____

[10] The cases Santos says support her position, Opp'n at 33, simply don't.  See Gorman v. Easley, 257 F.3d 738, 748–49 (8th Cir. 2001), rev'd, Barnes v. Gorman, 536 U.S. 181 (2002) (analyzing whether punitive damages were available against the government in claims to which § 1981a(a)(2) does not apply, and acknowledging as much); Moreno v. Consol. Rail Corp., 99 F.3d 782, 790 (6th Cir. 1996) (same); Roberts v. Progressive Indep., Inc., 183 F.3d 1215, 1222 (10th Cir. 1999) (same).

[11] Section 1981a(a)(2) does not extend to Section 508.

[T]itle VI of the Civil Rights Act of 1964." <u>Id.</u> § 794a(a)(2).  Put simply, Section 508 incorporates Title VI's remedies.  Title VI's remedies include monetary damages.  <u>See</u> <u>Lane v. Pena</u>, 518 U.S. 187, 191 (1996).

But VA argues that the monetary damages available for Title VI claims do not extend to Section 508 claims.  This argument focuses on the second step in the path laid out above: Section 508's incorporation of the remedies provided under 29 U.S.C. § 794a(a)(2).  That subsection—also known as Section 505(a)(2) of the Rehabilitation Act—lays out the remedies available for violations of Section 504 of that Act, which prohibits, among other things, disability discrimination by recipients or providers of federal assistance.  <u>See</u> 29 U.S.C. § 794a(a)(2).  As VA points out, the Supreme Court in <u>Lane v. Pena</u> held that the United States has not waived its immunity from damages for Section 504 claims, despite Section 505(a)(2)'s incorporation of Title VI's remedies. 518 U.S. at 192.  So VA argues that the federal government hasn't waived that immunity for Section 508 claims either.  Opp'n at 11.

This argument has some appeal.  As <u>Lane</u> explained, Section 505(a)(2) makes available Title VI's remedies only "to any person aggrieved by any act or failure to act <u>by any recipient of Federal assistance or Federal provider of such assistance</u>."  29 U.S.C. § 794(a)(2) (emphasis added).  Absent from this language is an explicit waiver of the <u>government's</u> sovereign immunity. <u>Lane</u>, 518 U.S. at 193 ("[I]t cannot be disputed that a reference to 'Federal provider[s]' of financial assistance . . . does not, without more, establish" a waiver of "the Federal Government's immunity against monetary damages awards beyond the narrow category of § 504(a) violations committed by federal funding agencies acting as such.").  By incorporating Section 505(a)(2), mustn't Section 508 also have incorporated this lack of waiver?

The answer, in fact, is no.  The D.C. Circuit faced a similar question in <u>Orozco v. Garland</u>, 60 F.4th 684 (2023).  Orozco, an employee of the Federal Bureau of Investigation ("FBI"), sued his employer for allegedly violating Section 508.  <u>Id.</u> at 685.  The FBI responded by arguing that Orozco had no cause of action under Section 508.  <u>See id.</u>  Section 508's cause of action takes the same winding path that supplies its remedies—<u>i.e.</u>, incorporating Title VI's cause of action via Section 505(a)(2).  <u>Id.</u> at 686–87.  As previously noted, Section 505(a)(2) grants a cause of action only to individuals suing a "recipient of Federal assistance or Federal provider of such assistance." 29 U.S.C. § 794(a)(2).  Because Orozco sued the FBI for its action as a federal employer—not a recipient or provider of federal assistance—the FBI contended that Orozco had no cause of action under Section 508.  <u>See</u> <u>Orozco</u>, 60 F.4th at 688.

The D.C. Circuit disagreed.  Section 508's incorporation of the "remedies, procedures, and rights" of Section 505(a)(2), <u>see</u> § 794d(f)(3), "means what it says—it brings forward only those remedial provisions, and no more."  <u>Orozco</u>, 60 F.4th at 688.  As the Circuit explained, the Supreme Court in <u>Consolidated Rail Corp. v. Darrone</u>, 465 U.S. 624 (1984), held that, by incorporating Title VI's remedies provisions, Section 505(a)(2) did not incorporate Title VI's limits on who could sue under the statute.  <u>Id.</u> at 689.  So too for Section 508's incorporation of Section 505(a)(2)—Congress explicitly carried forward only the "rights, remedies, and procedures" of that statute, not its separate definition of who could sue under its cause of action. <u>Id.</u> ("If Congress had meant to also incorporate" Section 505(a)(2)'s "limits on who may sue, Congress would have said so.  It did not.").

What controls who can sue under Section 508, <u>Orozco</u> held, is the provision that directly creates its cause of action: 29 U.S.C. § 794d(f)(3).  <u>Id.</u>  That provision states that "remedies, procedures, and rights" in Section 505(a)(2)  shall be "'<u>available</u> to <u>any</u> individual with a disability

filing' an administrative complaint." Id. (emphasis in original) (quoting 29 U.S.C. § 794d(f)(3)). So Orozco—an individual with a disability empowered to file an administrative complaint with the FBI—had a cause of action to sue the FBI. Id.

Considering Orozco alongside Lane, it's apparent that the federal government has waived its immunity from damages for Section 508 claims. Start by reconsidering the statutory steps in light of both cases. Section 508's civil rights and remedies provision, 29 U.S.C. § 794d(f)(3), incorporates only Section 505(a)(2)'s remedies and rights—not its federal-assistance limitation, Orozco, 60 F.4th at 689, on which Lane's sovereign immunity holding rests, 518 U.S. at 192–93. Section 505(a)(2), in turn, incorporates only Title VI's remedies and rights—but, again, not its limits on who can sue. See Consol. Rail Corp., 465 U.S. at 635. And Title VI remedies include compensatory damages. Lane, 518 U.S. at 191.

From there, Orozco and Lane instruct that, to determine whether the United States has waived its immunity from compensatory damages by incorporating Title VI's remedies, the Court must assess the text of 29 U.S.C. § 794d(f)(3). See Lane, 518 U.S. at 192–93 (interpreting Section 505(a)(2)'s text, not the remedies of the provision of Title VI it incorporates, to determine whether the government has waived its sovereign immunity from damages); Orozco, 60 F.4th at 689. Section § 794d(f)(3) extends Title VI's remedies "to any individual with a disability filing a complaint under" § 794a(f)(1). See 29 U.S.C. § 794a(f)(3). That provision, in turn, permits "any individual with a disability [to] file a complaint alleging that a Federal department or agency fails to comply with" Section 508's accessibility mandate—a mandate to which solely "Federal department[s]" and "agenc[ies]" are subject. Id. § 794a(a)(1)(A).

Read together, these provisions explicitly waive the federal departments' and agencies' sovereign immunity from compensatory damages. The only complaints that can be filed under

§ 794a(f)(1) are against federal departments and agencies, making governmental entities the only possible defendants in a civil suit under § 794a(f)(3). Congress thus necessarily subjected federal departments and agencies to the Title VI remedies that § 794a(f)(3) incorporates: unlike under Sections 501 and 504, there isn't even a group of private defendants to which Congress could have intended to limit its provision of remedies. Cf. Lane, 518 U.S. at 192–93. And § 794a(f)(3)'s broad language places no limits on the Title VI remedies a Section 508 complainant may recover: "any individual" who files a Section 508 complaint has available to her "[t]he remedies, procedures, and rights" of Title VI—not just some of them. § 794a(f)(3) (emphasis added). "If Congress had meant to" make available all of Title VI's remedies except compensatory damages, "Congress would have said so. It did not." See Orozco, 60 F.4th at 689.

Bolstering this interpretation is Lane's discussion of a provision that has been held to explicitly waive the government's immunity from damages. Section 505(a)(1)[12] provides that "[t]he remedies, procedures, and rights set forth in [S]ection 717 of the Civil Rights Act of 1964"— which allows monetary damages—"shall be available, with respect to any complaint under [S]ection 501 . . . to any employee or applicant for employment aggrieved by the final disposition of such complaint." 29 U.S.C. § 794a(a)(1). As Lane explained, this "broad" and "sweeping" "'any complaint' language" reveals that Congress "wished to make [the incorporated remedies] available broadly for all" Section 501 violations. Lane, 518 U.S. at 193.

Section 508 contains effectively the same "any complaint" language: "any individual with a disability filing a [Section 508] complaint." 29 U.S.C. § 794d(f)(3). And it similarly does not

---

[12] The analysis discussed here is based solely on Section 505(a)(1)'s text, which was read to waive sovereign immunity for Section 501 claims even before Congress enacted 42 U.S.C. § 1981a(a)(2). See Lane, 518 U.S. at 193. Lane then went on to explain that § 1981a(a)(2) confirmed as much. Id. at 194.

limit "[t]he remedies" it incorporates.    See id.    So § 794d(f)(3) makes Title VI's remedies "available broadly for all" Section 508 violations.  See Lane, 518 U.S. at 193.

In short, § 794d(f)(3) unambiguously waives federal departments' and agencies' immunity from compensatory damages.  See Lane, 518 U.S. at 192.  So while the Court will dismiss Santos's Section 501 claim for punitive damages, it will not do the same for her Section 508 claim for compensatory damages.

## II.    Jury Trial

The Court now briefly addresses what it construes as VA's motion to strike Santos's demand for a jury trial on her Section 508 claim.[13]  See supra, n.6.  Just because a statute waives the government's sovereign immunity doesn't mean that plaintiffs bringing claims under that statute have a right to a jury trial.  See Lehman v. Nakshian, 453 U.S. 156, 160–61 (1981). Plaintiffs have "a right to a trial by jury only where that right is one of 'the terms of [the Government's] consent to be sued.'"  Id. (alteration in original) (quoting United States v. Mitchell, 445 U.S. 535, 538 (1980)); see id. at 160 ("[I]t has long been settled that the Seventh Amendment right to a trial by jury does not apply in actions against the Federal Government.").  Like a waiver of sovereign immunity, a grant of a right to a jury trial to plaintiffs suing the government must be expressly stated in the statute's text.  Id. at 162.

The text of neither Section 508 nor the statutes it incorporates mentions a right to a jury trial.  See 29 U.S.C. § 794d; id. § 794a(a)(2); 42 U.S.C. § 2000d et seq.; Smith v. Barton, 914 F.2d 1330, 1336 (9th Cir. 1990).  So the Court agrees with VA that Santos has no right to have a jury try her Section 508 claim.  See Lehman, 453 U.S. at 160–61, 165 ("[I]t is unnecessary to go beyond

---

[13] As VA appears to recognize, Santos has a right to demand a jury trial for her Section 501 claim.  See 42 U.S.C. § 1981a(c)(1) ("If a complaining party seeks compensatory or punitive damages under this section . . . any party may demand a trial by jury.").

the language of the statute itself to conclude that Congress did not intend to confer a right to trial by jury."). The Court thus grants VA's motion to strike Santos's jury trial demand as to Count I.

## III.   Rule 12(b)(6)

Even if the Court has the power to adjudicate Santos's claims, VA contends that the Court must dismiss her complaint because it fails to state any claims. Here, the Court's analysis is generally limited to the four corners of the complaint: the Court, accepting the complaint's well-pleaded allegations as true, asks whether the complaint states each claim plausibly on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Well-pleaded allegations do not include simple "recitals of the elements of a cause of action" or legal conclusions framed as factual allegations. Id. Yet the Court also cannot take a myopic view of the complaint's factual allegations; it must draw from them all inferences that can reasonably be made in plaintiff's favor. See Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012). And, in some instances, the Court can zoom out beyond the complaint. As relevant here, the Court can consider "matters of public record," including EEOC records. See Ndondji v. InterPark Inc., 768 F. Supp. 2d 263, 272 (D.D.C. 2011) (quoting Felder v. Johanns, 595 F. Supp. 2d 46, 58–59 (D.D.C. 2009)); EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### a.   Count I: Section 508

VA makes two arguments for why Santos's complaint doesn't adequately allege that VA is violating Section 508: VA's "procurement and use of the Oracle Cerner System . . . complies with" Section 508 "because [VA] satisfies the [statute's] best meets exemption and undue burden exception," and even if that's not the case, VA's obligations under the NDAA "override[] any conflicting obligation from" Section 508 and thus "preclude" Santos's claim. Mot. at 41–42.

The Court is unconvinced.

23

### i. Section 508 Legal Scheme

Understanding VA's arguments and their flaws requires understanding the legal scheme that surrounds Section 508. This is not necessarily a simple task: Section 508 is a rarely litigated statute whose contours thus haven't been fleshed out by many courts. But resolving this motion to dismiss requires a grasp of only the basics.

Section 508's general mandate is as follows:

> When developing, procuring, maintaining, or using electronic and information technology, each Federal department or agency . . . shall ensure, unless an undue burden would be imposed on the department or agency, that the electronic and information technology allows, regardless of the type of medium of the technology . . . individuals with disabilities who are Federal employees to have access to and use of information and data that is comparable to the access to and use of the information and data by Federal employees who are not individuals with disabilities.

29 U.S.C. § 794d(a)(1)(A)(i).[14]

Recognizing the wide range of technology that federal departments and agencies employ, Congress delegated to the Architectural and Transportation Barriers Compliance Board (the "Access Board") the task of defining, among other things, "the technical and function performance criteria necessary to implement the requirements" of § 794d(a)(1)(A). See id. § 794d(a)(2). The criteria currently in effect—and in effect at all times relevant to Santos's claim—are the Revised 508 Standards. See 36 C.F.R. § 1194.1.

The Revised 508 Standards contain generally applicable provisions and provisions specific to certain types of technology. As relevant here, the latter include requirements for software (like EHRs), see id. § 1194, App. A. Ch. 2, § E207, and the former include a suite of "General Exceptions," see id. § E202. Two of those exceptions matter here: the "Undue Burden or

---

[14] Section 508 also requires that agencies ensure "individuals with disabilities who are members of the public seeking information or services from a Federal department or agency . . . have access to" information and data comparable to that enjoyed by non-disabled individuals. 29 U.S.C. § 794d(a)(1)(A)(ii).

Fundamental Alteration" Exception, id. §§ E202.6–6.3, and the "Best Meets" Exception, id. §§ E202.7–7.2.  Each elaborates on the exception baked into Section 508.  See 29 U.S.C. § 794d(a)(1)(A) ("unless an undue burden would be imposed on the department or agency . . ."); id. § 794d(a)(1)(B) (requiring an "alternative means of access" if conforming to the Access Board's standards would cause an "undue burden").

The Undue Burden or Fundamental Alteration Exception provides that if "an agency determines . . . that conformance to the requirements in the Revised 508 Standards would impose an undue burden or would result in a fundamental alteration in the nature of the [technology], conformance shall be required only to the extent that" said undue burden or fundamental alteration can be avoided.  36 C.F.R. § 1194, App. A. Ch. 2, § E202.6.  To make that determination, an agency must "consider the extent to which conformance would impose significant difficulty or expense," id. § E202.6.1, and if that consideration leads to a conclusion that undue burden or fundamental alteration would occur, the agency must "document in writing the basis for" that determination, including "an explanation of why and to what extent compliance with applicable requirements would" cause an undue burden or fundamental alteration, id. § E202.6.2.  Then, the agency must "provide individuals with disabilities access to and use of information and data by an alternative means that meets identified needs."  Id. § E202.6.3.

The Best Meets Exception applies when technology "conforming to one or more requirements of the Revised 508 Standards is not commercially available."  Id. § E202.7.  In that situation, an agency must "procure the [technology] that best meets the Revised 508 Standards consistent with the agency's business needs," id., and provide disabled individuals with "access to and use of information and data by an alternative means that meets identified needs," id. § E202.7.2.  Once again, the Standards require documentation: an agency must "document in

writing" its determination that the exception applies, "including a description of market research performed and which provisions cannot be met," and "the basis for determining that the [technology] to be procured best meets the requirements of the Revised 508 Standards." § E202.7.1.

In sum, Section 508 requires agencies to ensure employees with disabilities have access to and use of technology comparable to that of employees without disabilities, and the Revised 508 Standards define the criteria required to satisfy Section 508 and detail exceptions to those criteria, subject to certain conditions and procedures.

### ii. VA's arguments

With that background in mind, the Court turns back to VA's arguments: that the complaint fails to state a Section 508 claim because (1) VA meets the Undue Burden and Best Meets Exceptions and (2) the NDAA precludes VA from complying with Section 508.

### 1. Exceptions

The first issue with VA's first argument is apparent on its face. VA doesn't argue that the complaint fails to allege that VA, through its procurement and use of the Cerner System, is violating Section 508's <u>affirmative command</u>;[15] VA argues the complaint fails because VA satisfies the <u>exceptions</u> to Section 508.

"Although it is certainly true that plaintiffs must plead the elements of their claims . . . , they are not required to negate an affirmative defense in their complaint." <u>de Csepel v. Republic of Hungary</u>, 714 F.3d 591, 607–08 (D.C. Cir. 2013) (cleaned up). Of course, a provision labeled an "exception" or "exemption" isn't invariably an affirmative defense. <u>See</u> <u>Cunningham v. Cornell Univ.</u>, 145 S. Ct. 1020, 1027–28 (2025) (explaining that whether an exception is an affirmative

---

[15] <u>See</u> Am. Compl. ¶¶ 23–24, 31, 56–61 (alleging that the Cerner System is not fully accessible to Santos).

defense is a matter of statutory interpretation). Yet VA itself states that Undue Burden and Best Meets exceptions are defenses to a Section 508 claim. See Mot. at 14 (explaining that the exceptions are "defenses to a Section 508 claim"); Reply at 7 (not contesting Santos's argument that because these are defenses, her complaint need not address them).

And the Court will not just take VA's word for it. Consider the Americans with Disabilities Act ("ADA"), which requires covered entities to "mak[e] reasonable accommodations to the known physical or mental limitations of" disabled employees and applicants "unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A) (emphasis added). It is well settled that this language creates an affirmative defense to reasonable accommodation claims under both the ADA and Section 501 of the Rehabilitation Act. Flemmings v. Howard Univ., 198 F.3d 857, 861 (D.C. Cir. 1999); Ali v. Regan, 111 F.4th 1264, 1268–69 (D.C. Cir. 2024) (explaining Section 501 incorporates ADA's standards, including undue-hardship defense); Barth, 2 F.3d at 1187–88 (discussing Section 501's undue-hardship regulations similar in language to the Revised 508 Standards' exceptions). The Court can see no principled reason that the undue burden clause in Section 508 wouldn't create an affirmative defense if the ADA's undue hardship clause does. Each clause lies within a statutory mandate and uses "unless" to carve out entities from that mandate under certain circumstances.

As a result, the Court may dismiss Count I based on these exceptions only if Santos's "complaint contradicts" her Section 508 claim by putting forth allegations that foreclose any "rejoinder to the affirmative defense[s]." See de Csepel, 714 F.3d at 608 (internal quotation marks omitted); Smith-Haynie v. District of Columbia, 155 F.3d 575, 578 (D.C. Cir. 1998) (holding a

defendant may raise an affirmative defense in a "pre-answer motion under Rule 12(b) [only] when the facts that give rise to the defense are clear from the face of the complaint").

Santos's complaint contains no such contradictory allegations, nor does VA argue that it does. VA instead departs from the complaint and puts forward its own (conclusory) allegations that it contends show the exceptions are met. See Mot. at 43 (claiming the Cerner System was the "only . . . product that would meet [VA's] needs" considering the NDAA); id. at 46 ("Conformity with . . . the Revised 508 Standards would have imposed an undue burden" because adopting the Cerner System was the "only way to reasonably" comply with the NDAA's directive.).[16] This, however, reveals the second issue with VA's exceptions argument: whether these affirmative defenses are satisfied are <u>factual</u> issues not properly resolved on a Rule 12(b)(6) motion. See Langon v. Dep't of Health & Hum. Servs., 959 F.2d 1053, 1060 (D.C. Cir. 1992) (whether reasonable accommodation would pose undue hardship is a factual question). VA's arguments thus must wait for a later stage of this litigation.

### 2. NDAA

VA's next contention is that even if Santos's complaint sufficiently pleads a violation of Section 508, that claim is precluded by the NDAA. Mot. at 47. According to VA, "[f]or all intents and purposes, the only way that [it] could" comply with the NDAA's interoperability mandate was to acquire the EHR that DoD uses—i.e., the Cerner System. Id. at 48. So VA contends that any cause of action Santos may have under Section 508 is precluded by the NDAA. Id. at 47.

---

[16] The facts VA alleges in its motion are not found in the administrative record, nor does VA contend they are. The closest VA gets is in the VA's Determinations and Findings on adopting the Cerner System (a document of public record). Therein, VA explains that "[c]ontinuing to modernize [CPRS] or selecting a different commercial EHR" from the Cerner System "will result in VA having to develop and maintain an increasingly complex technical architecture without providing seamless care." Cerner D&Fs at 3. But that undisputably shows neither that it would pose an undue burden to have the Cerner System be Section 508 compliant, nor that a Section 508-compliant EHR is not commercially available (let alone that VA complied with the exceptions' procedural requirements).

When faced with an argument that one statute precludes another, "a court must give effect to both" statutes unless there is a "'positive repugnancy' between the two laws." Conn. Nat'l. Bank v. Germain, 503 U.S. 249, 253 (1992) (quoting Wood v. United States, 16 Pet. 342, 363, (1842)). Determining whether such repugnancy exists does not entail assessing the practicality of implementing the two laws. It is, as VA acknowledges, a matter of statutory interpretation. See POM Wonderful LLC v. Coca-Cola Co., 573 U.S. 102, 111–12 (2014); Mot. at 47.

But VA points to no text in either Section 508 or the NDAA that is "positively repugnant" to the text of the other. Indeed, VA's argument rests on no textual analysis whatsoever. VA instead simply avers that adopting DoD's EHR was "the only feasible option" for VA to comply with NDAA, and since DoD's EHR is not fully compatible with JAWS, the NDAA in essence required VA to have an EHR that (allegedly) spurns Section 508's requirements. See Mot. at 48– 49.

VA must rely on this practical-effect argument because the text of the NDAA is not at all repugnant to the text of Section 508. In relevant part, the NDAA requires VA and DoD to "ensure that [their] electronic health record systems . . . are interoperable with an integrated display of data, or a single electronic health record." 2014 NDAA § 713(b)(1).[17] Nothing in that text is even in tension—let alone incompatible—with Section 508's requirement that VA ensure that "individuals with disabilities who are Federal employees have access to and use of information and data that is comparable to the access to and use of the information and data by" nondisabled individuals. 29 U.S.C. § 794d(a)(1)(A)(i).

---

[17] As mentioned earlier, the interoperability obligation does not require that DoD and VA adopt the same EHR or that VA adopt DoD's EHR.

It is possible, of course, that the NDAA's interoperability requirement makes complying with both it and Section 508 difficult.  If so, that may support VA's argument that it satisfied the Undue Burden Exception.  However, arguments to that effect are properly made after discovery in a motion for summary judgment, not in a motion to dismiss.

*          *          *

Hence, the Court buys neither of VA's arguments as to why Santos's complaint fails to allege a Section 508 claim.  So the Court denies VA's motion to dismiss Count I.[18]

### b.  Count II: Section 501

VA launches three attacks against Count II.  First, VA argues that Santos's Section 501 claim is duplicative of her Section 508 claim, and "a Section 508 claim cannot, as a matter of law, double as a failure to accommodate claim."  Mot. at 53 (cleaned up).  Second, VA contends that Santos's complaint does not plausibly allege that VA denied her reasonable-accommodation request and thus does not allege a Section 501 claim.  Id. at 58–59. And regardless, says VA, it has provided Santos with a reasonable accommodation.  Id. at 59–62.  None of these arguments has merit—at least at this stage of the litigation.  So the Court denies VA's Rule 12(b)(6) motion to dismiss Count II.

### i.  Section 508 and Section 501

VA's first argument boils down to this: the same set of facts give rise to both of Santos's claims; Santos seeks the same injunctive relief for both; a narrower set of remedies is available under Section 508 than under Section 501; and thus it would be a workaround to permit Santos to

---

[18] VA also appears to argue that Count I should be dismissed because Santos has not established the four-factor permanent-injunction test.  Mot. at 49–51.  But a plaintiff seeking a permanent injunction need neither plead nor otherwise establish those four factors to survive a motion to dismiss.

obtain Section 501 remedies by alleging that the same conduct that underlies her Section 508 claim also amounts to a violation of Section 501.  See Mot. at 57–58.

Issues with this argument abound, even accepting the first and second propositions as true.[19]  To start, the Court has determined that Section 501 and Section 508 both provide for injunctive and monetary relief.  So any argument that the two causes of action live in tension due to their remedies fails.[20]  And even were Section 508's remedies narrower, VA cites no case that supports the proposition that a plaintiff cannot bring a claim that provides for broader remedies alongside a claim that provides for narrower remedies.

Lastly, and most importantly, VA's argument—although couched in different language— is really that the same conduct cannot be unlawful in more than one way and that different claims cannot seek the same relief (no matter if the same relief is permitted by statute).  That argument ignores not only duly enacted laws but also common sense.  Many civil cases contain multiple counts that seek nearly identical relief based on different legal theories but essentially the same facts.

### ii.  Failure to Allege Denial

VA's second argument is more traditional: that Santos's complaint fails to allege the elements of a Section 501 reasonable accommodation claim.  Mot. at 58–62.  Those elements are "(i) she was disabled within the meaning of the Rehabilitation Act; (ii) her employer had notice of

---

[19] They are not true.  Santos's claims don't challenge the same conduct and would not necessarily be redressed by the same relief.  Count I is based on VA's procurement and rollout of an EHR that is allegedly inaccessible to blind individuals, while Count II is based on VA's failure to provide her with a reasonable accommodation after procuring and rolling out that EHR.  And Count II could be redressed by an injunction requiring a certain reasonable accommodation short of an EHR that is fully Section 508–compliant.

[20] That Section 508 does not provide for a jury trial right does not make VA's argument any more convincing.  Courts regularly put certain claims to a jury and certain claims to the court.  See, e.g., Jones v. Wash. Metro. Area Transit Auth., 205 F.3d 428, 431 (D.C. Cir. 2000).

her disability; (iii) she was able to perform the essential functions of her job with or without reasonable accommodation; and (iv) her employer denied her request for a reasonable accommodation of that disability." Solomon v. Vilsack, 763 F.3d 1, 9 (D.C. Cir. 2014) (cleaned up).

VA challenges only the final element.[21] But Santos's complaint adequately alleges that VA denied her request for an accommodation. It states that Santos requested "full access to an EHR system that is accessible and compatible with JAWS," that "VA has failed to provide [her] with this accommodation," and that, instead, "VA's only response . . . was to give her permission to continue using CPRS . . . in a read-write only format" and assistance from sighted individuals. Am. Compl. ¶¶ 35–36. The reasonable inference drawn from these allegations is that VA denied Santos's request. See Hettinga, 677 F.3d at 476 (noting a court assessing a complaint on a Rule 12(b)(6) motion must draw reasonable inferences in plaintiff's favor).

VA resists this reading. In its view, Santos has not shown that VA has denied her request for a reasonable accommodation because it intends to ensure the Cerner System be made JAWS-compatible—it's just that it "ha[s] little to no control over the tim[e]" it takes Oracle to update the Cerner System. Mot. at 58–58. So, says VA, "the amount of time that has elapsed" since Santos requested an accommodation "is reasonable and not tantamount to a denial of a request for accommodation." Mot. at 59.

Once again, however, VA jumps the gun by making a factual argument improperly raised in a Rule 12(b)(6) motion. See Graffius v. Shinseki, 672 F. Supp. 2d 119, 131 (D.D.C. 2009) (explaining that whether federal employer denied accommodation request is a factual question).

---

[21] See Am. Compl. ¶¶ 67–69 (alleging Santos is blind and therefore disabled, that VA was aware of her disability when it rolled out the Cerner System, and that Santos can perform the essential functions of her job); VA's EEOC Resps. to Complainant's Disc. Reqs. [ECF No. 12-5] at 1 (admitting the same); 29 C.F.R. § 1630.2(g) (definition of disability); 29 C.F.R. § 1630.2(m) (definition of "qualified" for employment).

The cases VA relies upon show as much. Each dealt with whether, after discovery, the plaintiff met his summary-judgment burden by putting forward evidence that his employer had denied his request for a reasonable accommodation. See Ward v. McDonald, 762 F.3d 24, 31 (D.C. Cir. 2014); Elzeneiny v. District of Columbia, 125 F. Supp. 3d 18, 37–39 (D.D.C. 2015); Mot. at 58–59. VA may raise that argument again at that stage. See Elzeneiny, 125 F. Supp. 3d at 37–39 (collecting summary-judgment cases regarding whether an employer's delayed provision of an accommodation amounts to a denial).

### iii.  VA Provided Reasonable Accommodation

VA's last argument meets the same fate. According to VA, the Court should dismiss Count II because VA has provided Santos with reasonable accommodations, namely her full-time sighted assistant and read-write only access to CPRS. See Mot. at 59–61. This is yet another factual question that the Court cannot resolve on a motion to dismiss. See Pappas v. District of Columbia, 513 F. Supp. 3d 64, 96–97 (D.D.C. 2021) (collecting cases). As before, this is evident from "the fact that [both] cases" VA cites "concerning a determination that the requested accommodations were not reasonable . . . were determined after discovery at the summary judgment phase of litigation." See id. at 97; see also Carter v. Bennett, 840 F.2d 63, 68 (D.C. Cir. 1988); Langon v. Dep't of Health & Hum. Servs., 959 F.2d 1053, 1057 (D.C. Cir. 1992). And to the extent that VA argues that—as a matter of law—it has provided Santos with a reasonable accommodation because it provided her with a sighted assistant, see Mot. at 61, the regulation on which VA relies provides only that a qualified reader "may" be a reasonable accommodation, 29 C.F.R. § 1630.2(o)(2)(ii) (emphasis added). Whether it is a reasonable accommodation in a particular circumstance remains a question of fact.

### CONCLUSION

VA challenged nearly every aspect of Santos's complaint.  But the only challenges with merit are those to Santos's right to seek punitive damages for her Section 501 claim and her right to have a jury decide her Section 508 claim.  So, while the Court will respectively dismiss and strike those demands, the rest of Santos's claims live on.  A separate order consistent with this Opinion shall issue.

/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>July 10, 2025</u>